UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Adam Quincy Stang,

    Plaintiff,

v.

Paycor, Inc.,

    Defendant.

Case No. 1:20-cv-00882

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court on Plaintiff Adam Stang's Motion for Court-Authorized Collective Notice. (Doc. 14). Defendant Paycor, Inc. filed a Response in Opposition (Doc. 18) and Plaintiff filed a Reply (Doc. 20). Defendant also filed an opposed Motion to File a Sur-Reply. (Doc. 21); *see* (Doc. 22). The Court will grant Defendant's Motion to File a Sur-Reply (Doc. 21) and consider the proposed Sur-Reply (Doc. 21-1) as properly docketed.

### I. BACKGROUND

Plaintiff brings this lawsuit on behalf of himself and similarly situated exempt-classified Client Sales Executives, and other similar sales representative roles, at Defendant's office or other fixed location.[1] (Doc. 9 ¶¶ 1, 30). Plaintiff worked in Defendant's Cincinnati, Ohio office as a Client Sales Executive from May 23, 2016 to November 12, 2018. (Doc. 14-3 Plaintiff's Decl. ¶ 1); (Doc. 18-1 Ellie Elder Decl. ¶¶ 3, 7). Defendant is a software company that is headquartered in Cincinnati, Ohio, with other offices nationwide, and sells various human resources products to companies nationwide.

---

[1] Plaintiff filed his Notice of Consent. (Doc. 1 PageID 15); *see* 29 U.S.C. § 216(b).

(Doc. 9 ¶¶ 2-3).

The Amended Complaint alleges that Defendant failed to pay Plaintiff, and others in the same role or similar sales representative roles, overtime in violation of the Fair Labor Standards Act ("FLSA") and Ohio's wage laws. (Doc. 9). The Amended Complaint alleges that Defendant has a policy of misclassifying Client Sales Executives, and other similar sales representative roles, as exempt from the FSLA's and Ohio's overtime provisions such that Plaintiff, and others in the same role or similar sales representative roles, repeatedly worked more than 40 hours per workweek without receiving overtime compensation. (*Id.* ¶¶ 5, 8-9, 33, 48, 51, 55-57).

Plaintiff currently asks the Court to conditionally certify the following FLSA collective:

> Plaintiff and all similarly situated persons who work or have worked for Paycor as exempt-classified Client Sales Executive, Senior Client Sales Executive, and Newtown Client Sales Executive [(now called Sales Executive, Client)] who worked primarily at Paycor's offices or another fixed location from November 3, 2017 to the present and who elect to opt in to this action.

(Doc. 20 PageID 243-44) (emphasis omitted); *see* (Doc. 18-1 Elder Decl. ¶ 12); *see also* (Doc. 14 PageID 109-121); (Doc. 20 PageID 232-39). Plaintiff also requests that the Court permit Notice of this action to be sent to members of the proposed FLSA collective informing them of their right to opt-in to this case. (Doc. 14 PageID 121-24); (Doc. 20 PageID 239-45). Defendant responds that Plaintiff has not met his burden of showing that a collective action should be conditionally certified. (Doc. 18 PageID 205-15); (Doc. 21-1 PageID 261-63). In the alternative, and if the Court conditionally certifies Plaintiff's proposed FLSA collective, Defendant argues that the proposed Notice sought is flawed. (Doc. 18 PageID 215-18).

II. **ANALYSIS**

    a. **Conditional Certification**

The FLSA requires a covered employer to pay overtime wages to an employee who works more than 40 hours per week unless the employee falls into the category of exempted employees. *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020); 29 U.S.C. §§ 207(a)(1), 213. The FLSA authorizes an employee to sue an employer for violations of the FLSA's overtime protections in a collective action on behalf of himself and other employees who are "similarly situated." 29 U.S.C. § 216(b).[2] Employees who are "similarly situated" are permitted to opt-in[3] to the FLSA collective action. *Comer*, 454 F.3d at 546. The lead plaintiff bears the burden to show that the proposed collective members are similarly situated to the lead plaintiff. *Myers v. Marietta Mem'l Hosp.*, 20 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). Neither the FLSA nor the U.S. Court of Appeals for the Sixth Circuit ("Sixth Circuit") has defined the term "similarly situated." *Id.* (citing *O'Brien*, 575 F.3d at 584). Courts in the Sixth Circuit conduct a two-phase[4] inquiry to determine whether plaintiffs are similarly situated: conditional and final certification. *Id.* (citing *Frye*

---

[2] A successful employee can recover unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and costs. *Id.*

[3] An FLSA "collective action and is different from a class action brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, in that it utilizes an opt-in mechanism rather than the opt-out mechanism employed under Rule 23." *Adams v. Wenco Ashland, Inc.*, No. 1:19-CV-1544, 2020 WL 2615514, at *3 (N.D. Ohio May 22, 2020) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)).

[4] The Court declines Defendant's invitation to disregard the Sixth Circuit's authority on the two-phase FLSA certification process in favor of the U.S. Court of Appeals for the Fifth Circuit's recent rejection of the two-phase certification process in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). (Doc. 18 PageID. 212-15).

*v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012)); *accord Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017).

"In the first phase, the conditional-certification phase, conducted at the beginning of the discovery process, named plaintiffs need only make a 'modest factual showing' that they are similarly situated to proposed class members." *Myers*, 201 F. Supp. 3d at 890 (citing *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015)); *accord Comer*, 454 F.3d at 547. "The standard at the first step is 'fairly lenient . . . and typically results in "conditional certification" of a representative class.'" *Myers*, 201 F. Supp. 3d at 890 (alteration in original) (quoting *Comer*, 454 F.3d at 547). "Plaintiffs are similarly situated 'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *Id.* (citing *O'Brien*, 575 F.3d at 585). "The named plaintiff 'need only show that [his] position is similar, not identical, to the positions held by the putative class members.'" *Id.* (citing *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011)).

At this first phase, "a court 'does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility.'" *Id.* (citing *Waggoner*, 110 F. Supp. 3d at 765). "In determining conditional certification, courts have considered 'whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread . . . plan was submitted.'" *Id.* (alteration in original) (citing *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 486 (S.D. Ohio 2014)). "If conditional certification is granted, 'plaintiffs are permitted to solicit opt-in notices, under court supervision, from current and former employees.'" *Id.* (quoting *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015)).

4

"At the second stage, the final certification phase, conducted after the conclusion of discovery, courts 'examine more closely the question of whether particular members of the class are, in fact, similarly situated.'" *Id.* (quoting *Comer*, 454 F.3d at 547). At this second phase, "the court has much more information on which to base its decision of whether the proposed plaintiffs are similarly situated" and thus employs a stricter standard. *Id.* (citing *Comer*, 454 F.3d at 547).

In support of conditional certification, Plaintiff submits, *inter alia*, his declaration and a copy of one of Defendant's manuals acquired by Plaintiff in 2018 ("Manual"). (Doc. 14-2 Chauniqua D. Young Decl. ¶¶ 4, 6); *see* (Doc. 14-3 Plaintiff's Decl. ¶ 10); (Doc. 14-5 "Sales Policy Guide to Paycor's Sales Policies & Rules"). Plaintiff states that while employed by Defendant he worked as a Client Sales Executive. (Doc. 14-3 Plaintiff's Decl. ¶ 1). He explains that, as a Client Sales Executive, he primarily performed sales-related work, including researching potential sales leads, cold calling sales prospects, emailing sales prospects, booking qualified meetings with sales prospects, and tracking his sales progress. (*Id.* ¶ 2). Plaintiff states that he performed almost all of his sales work by phone, email, and videoconference from Defendant's Cincinnati office or from home. (*Id.* ¶¶ 1, 3). He explains that Defendant used SalesForce, a customer relationship management platform, to manage and track his and other sales representatives' sales work, and sales representatives could see each other's sales numbers in SalesForce. (*Id.* ¶¶ 4, 6). He states that Defendant required him and other sales representatives to meet certain sales metrics on a weekly and monthly basis. (*Id.* ¶ 5). He states that Defendant maintained standardized training materials for its sales representatives. (*Id.* ¶ 11). Plaintiff explains that, as a Client Sales Executive, Defendant paid him a base salary; he was

5

eligible to earn commissions; Defendant did not direct Plaintiff to record his hours in a timekeeping system and he did not do so; he regularly worked more than 40 hours each week; it was difficult to meet Defendant's job requirements without working substantially more than 40 hours per week; and he did not receive overtime compensation for the hours that he worked over 40 hours in a workweek. (*Id.* ¶¶ 11-16). Plaintiff names four other Client Sales Executives who he states also performed the same job duties in the Cincinnati office, regularly worked more than 40 hours per week, received a base salary with a commission eligibility option, and did not receive overtime compensation. (*Id.* ¶¶ 16-18). Plaintiff explains that he knows this information about the four named Client Sales Executives by observing them in the office, speaking with them individually, hearing about their sales progress during monthly sales meetings, and looking at their performance metrics on SalesForce. (*Id.*).

In response, Defendant submitted the declaration of Ellie Elder who serves as Defendant's "Director, HR Business Partner." (Doc. 18-1 Elder Decl.). Ms. Elder explains that she reads Plaintiff's proposed FLSA collective, found in the Motion for Court-Authorized Collective Notice, to include 15 different job categories of Defendant's sales representatives. (*Id.* ¶¶ 2-3). Ms. Elder clarifies that, of these 15 different job categories, only Defendant's sales representative positions of Client Sales Executive, Senior Client Sales Executive, and Newtown Client Sales Executive are exempt positions. (*Id.* ¶¶ 11-12). In Reply, and in light of Ms. Elder's clarification, Plaintiff amended his proposed FLSA collective to include only those employees who worked for Defendant as Client Sales Executives, Senior Client Sales Executives, and Newtown Client Sales Executives. (Doc. 20 PageID 243-44).

6

The Manual states that the Client Sales Executive roles and Newtown Client Sales Executive role are generally housed at Defendant's Cincinnati headquarters and make the majority of their sales calls virtually from their office. (Doc. 14-5 PageID 142-43).

Based on the information provided to the Court thus far, Plaintiff has made a modest factual showing to support conditionally certifying the following FLSA collective— Plaintiff and all similarly situated persons who work or have worked for Paycor as an exempt-classified Client Sales Executive, Senior Client Sales Executive, and Newtown Client Sales Executive (now called Sales Executive, Client) who worked primarily at Paycor's offices or another fixed location from November 3, 2017 to the present and who elect to opt in to this action—and to support sending Notice to those employees who work or worked for Defendant in those three roles. *See Comer*, 454 F.3d at 547; *see also* (Doc. 20 PageID 243-44).

   **b. Notice**

Plaintiff seeks permission to send the proposed Notice by mail, email, text message, and a reminder. (Doc. 14 PageID 121-23); (Doc. 20 PageID 239-45). Defendant responds that any Notice should be distributed once and by regular mail only. (Doc. 18 PageID 215-16). Trial courts have discretion to facilitate notice to potential plaintiffs in FLSA collective actions. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "There is no 'one-size-fits-all' approach to notifying putative class members." *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074 (S.D. Ohio 2016). The trend in this District is to allow both postal mail and email notice to all the putative class members, as "[t]he use of two methods will (i) increase the likelihood that all potential opt-in plaintiffs receive notice of the suit and (ii) likely obviate the need to resend notice if an

employee's home address is inaccurate." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 899 (S.D. Ohio 2018) (collecting cases). Including a third method of texting putative class members, however, has not been allowed unless the named plaintiff can show that notice via postal and electronic mail is insufficient as to a given potential member. *E.g.*, *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2017 WL 3500411, at *5 (S.D. Ohio Aug. 15, 2017). Plaintiff has not shown that a third method of notice via text or a reminder is necessary. *See, e.g., id.*

Plaintiff requests a 90-day opt-in period. (Doc. 14 PageID 121); (Doc. 20 PageID 240). Defendant counters that a 60- or 75-day opt-in period is reasonable. (Doc. 18 PageID 218). A 75-day opt-in period is adequate in this matter.

Plaintiff requests that the Court order Defendant to produce a computer-readable list that contains the names, last known mailing address, last known telephone numbers, last known personal and work email addresses, work locations and dates of employment, and the last four digits of Social Security numbers of the members of the conditionally certified FLSA collective. (Doc. 14 PageID 124); (Doc. 20 PageID 242). Defendant responds that the Court should not order it to provide the last known telephone numbers, last known personal and work email addresses, and the last four digits of Social Security numbers of the members of the conditionally certified FLSA collective. (Doc. 18 PageID 217). Defendants are required to produce a computer-readable list that includes the names, last known mailing address, last known personal and work email addresses, and work locations and dates of employment for the members of the conditionally certified FLSA collective, but not those members' last known telephone numbers or the last four digits of Social Security numbers.

Plaintiff requests that the Court authorize the creation of a standalone website through which opt-in plaintiffs can electronically submit claim forms. (Doc. 14 PageID 123-14). Defendants oppose this request to the extent that Plaintiff would create and maintain the proposed website and asserts that the website should provide no characterization of this case. (Doc. 18 PageID 217-18). In his Reply, Plaintiff agrees that a neutral claims administrator should create and maintain the proposed website, but argues that the content of the website should be the language in the Notice that the Court ultimately approves. (Doc. 20 PageID 234, 243). "District courts in the Sixth Circuit regularly approve notice procedures in which potential opt-in plaintiffs may electronically sign and submit consent forms." *Kilmer v. Burntwood Tavern Holdings LLC*, No. 1:19-CV-02660, 2020 WL 2043335, at *4 (N.D. Ohio Apr. 28, 2020) (collecting cases). The Court will grant Plaintiff's request that potential opt-in plaintiffs be permitted to submit consent to join forms via a website. *See id.* A neutral claims administrator must create and maintain that website and the content of the website shall be the language in the Notice that the Court approves, as described herein.

Defendant appears to object to Plaintiff's inclusion of the following language in the proposed Notice: "the notice period re-starts if the notice is returned undeliverable and a new address is located" and "[i]f you believe that you have been penalized, discriminated against, or disciplined in any way as a result of you receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, please contact Plaintiff's lawyers listed below." (Doc. 18-2 PageID 226). Unlike its other objections to the proposed Notice, for its comments and objection to the inclusion of these two sentences, Defendant directs the Court to an attached redline version of the proposed Notice and its comments

9

and objection therein. (Doc. 18 PageID 218). Despite Defendant's statement otherwise, in the future, it would be easier to present its comments and objection in the text of its responsive memorandum instead of directing the Court to different document and then to comments and an objection therein. Regardless, the Court agrees with Plaintiff regarding the inclusion of those two sentences (Doc. 20 PageID 244), and those sentences should remain in the Notice except that the second sentence should read: "[i]f you believe that you have been penalized, discriminated against, or disciplined in any way as a result of you receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, please contact Plaintiff's lawyers listed below or another attorney of your choice."

Finally, Defendant does not object to Plaintiff's proposed Consent to Join Form (Doc. 14-9) and the Court approves the Consent to Join Form as proposed.

### III.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant's Motion to file its Sur-Reply (Doc. 21) is **GRANTED**, and the Court will consider Defendant's proposed Sur-Reply (Doc. 21-1) as docketed;

2. Plaintiff's Motion for Court-Authorized Collective Notice. (Doc. 14) is **GRANTED, as described above**;

3. Defendant shall provide a computer-readable list of the information described above of all putative collective members to Plaintiff's counsel **within fourteen (14) days** of entry of this Order; and

4. Plaintiff shall file a copy of the Court-Authorized Collective Notice, that is consistent with the Court's findings herein, **within fourteen (14) days** of entry of this Order, for purposes of the record.

**IT IS SO ORDERED.**                    _/s Michael R. Barrett____
                                          Michael R. Barrett, Judge
                                          United States District Court